UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                    )<br>         Plaintiff,           )<br>                                    )<br>v.                                )<br>                                    )<br>CESAR REYES-LAGUNA,      )<br>                                    )<br>         Defendant.          )<br>_____)  | Criminal No. 08-CR-3057-L<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**<br><br>[Doc. No. 20] |

On March 2, 2009, Defendant Cesar Reyes-Laguna filed a motion to suppress statements obtained as a result of his arrest. The Government filed a response and opposition to Defendant's motion and an evidentiary hearing was held on April 27, 2009. Having considered the evidence presented at the hearing, the submissions of the parties, and applicable case law, the Court concludes that Defendant's statements were obtained in violation of his *Miranda*[1] rights. Accordingly, Defendant's motion will be **GRANTED**.

## STATEMENT OF FACTS

Defendant is charged in a two count indictment with bringing in illegal aliens for financial gain and aiding and abetting in violation of 8 U.S.C. §1324(a)(2)(B)(ii) and 18 U.S.C. § 2 and with bringing in illegal aliens without presentation in violation of 8 U.S.C. §

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1324(a)(2)(B)(iii).

On August 29, 2008, at approximately 4:00 a.m., Defendant entered the United States through the San Ysidro, California Port of Entry. Defendant was driving a gold 1980 Volvo sedan. Customs and Border Protection (CBP) Officer M. Valete, determined that the license plate on the vehicle was registered to a Mercedes, not a Volvo. Officer Valete also observed that the interior of the vehicle appeared to have been recently upholstered, and that the back seats looked bulky. Defendant presented Officer Valete with a vehicle registration in his name and stated that the car was his and that he had owned it for several weeks. Officer Valete suspected the vehicle registration was counterfeit because of the license plate discrepancy and the appearance of the inside of the car. Therefore, he referred Defendant to secondary inspection. At secondary, CBP agents found two women hidden in a specially built compartment under the rear seat. Defendant was arrested and his fingerprints were checked in a computer database. The database search revealed that Defendant had two prior arrests for alien smuggling.

After Defendant was arrested, CBP Officer Nicasio and her partner CBP Officer Campuzano interviewed him in the security office. The interview was videotaped and was played during the evidentiary hearing. The video demonstrates that Officer Nicasio started to advise Defendant of his *Miranda* rights in English. When Defendant indicated that he did not understand, Officer Campuzano asked him if he would prefer to speak in Spanish. He said he did. Officer Nicasio then re-advised Defendant of his *Miranda* rights in Spanish. (Def. Ex. A, at 4:1-15.)

With respect to the right to appointed counsel, Defendant was advised:

> You have the right to speak to an attorney so they can advise you before we ask you any questions, and to have them present with you during the questions. . . . If you do not have the money to employ an attorney, one can be provided for you before we ask you any question if you wish . . . . If you decide to answer our questions now without having an attorney present, you will always have the right to stop answering whenever you like, until you can speak to an attorney.

(Def. Ex. A, at 4:23-25; 5:1-6.)

After Defendant indicated that he understood his rights, the following conversation took place:

| | | |
|---|---|---|
| 1 | Nicasio: | O.k., so, again, out loud, so do you want to answer the questions, or do you want an attorney? |
| 2 | Defendant: | Bu– |
| 3 | Nicasio: | Because those are your right, whatever you like. |
| 4 | Defendant: | **But when will they bring me the attorney?** |
| 5 | Campuzano: | They're not going to bring the attorney here.  You are going to have to wait until they go and see you there where you're going to be. |
| 6 | | |
| 7 | Nicasio: | When you go, when we take you where we're going to take you, so when you go to see the, the judge, then they will appoint you an attorney. |
| 8 | | |
| 9 | Defendant: | An attorney? |
| 10 | Nicasio: | Mmm-hmm.  But that's your right either way. |
| 11 | Defendant: | What was I going to say to you, and, and where will I be taken?  Do you know? |
| 12 | | |
| 13 | Nicasio: | To MCC. |
| 14 | Defendant: | Where is that? |
| 15 | Nicasio: | There, in San Diego, downtown. |
| 16 | Defendant: | Downtown? |
| 17 | Nicasio: | Mmm-hmm. |
| 18 | Defendant: | Mmm.  And from there is where I'm going to see an attorney, an, um, a judge and everything? |
| 19 | Nicasio: | They appoint you an attorney there. |
| 20 | Defendant: | Mm. |
| 21 | Nicasio: | Whatever you like, its your right. [Unintelligible] and you say you understood your rights? |
| 22 | | |
| 23 | Defendant: | Yes. |
| 24 | Nicasio: | Now it's, you want to answer the questions we're going to ask you now, and if not, whatever you like. |
| 25 | | [Pause] |
| 26 | Defendant: | Yes. |
| 27 | Nicasio: | Do you want to answer or no? |
| 28 | Defendant: | Yes, I'll answer. |

(Def. Ex. A, at 5:15-25; 6:1-13 (emphasis added).)

After this exchange, the officers asked Defendant to read out loud from a pre-printed waiver form. Defendant read: "I am...wil...ling to...make statements and answer questions. For the moment I do not wish to have an attorney. I understand and am...aware of what I am doing. I have not been the obj...ject of promises, threats, prices [sic], or ...coer...coercion of any kind." (Def. Ex. A, at 6:14-17.) When Officer Campuzano asked Defendant if he understood what he had read, Defendant replied "No." (Def. Ex. A, at 6:18-19.) She told him that the form meant he was agreeing that the officers had not threatened him and that he was making a statement voluntarily. At that point, Defendant signed the waiver form and the officers interviewed him.

## DISCUSSION

Defendant argues that his statements must be suppressed because he did not knowingly and intelligently waive his *Miranda* rights. The government bears the "heavy" burden to demonstrate "that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona*, 384 U.S. 436, 469-475 (1966). If the government fails to meet its burden, the defendant's statements must be suppressed. *Id.* at 479.

In *Miranda v. Arizona*, the Unites States Supreme Court held that a person in custody must be informed, before interrogation begins, that he has a right to remain silent and the right to consult with an attorney and to have counsel present during questioning.[2] *Id.* at 469-473. If a suspect waives his right to counsel, law enforcement officers are free to question him. *Davis v. United States*, 512 U.S. 452, 458 (1994). However, "if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made

---

[2] The Court finds the language of the *Miranda* warning was sufficient to convey Defendant's right to have the assistance of appointed counsel prior to questioning. With respect to this right, *Miranda* requires that police inform a suspect that "if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. The language used in this case differs from that set forth in *Miranda* in that Defendant was told that an attorney "can be provided" rather than "will be appointed." However, the language used in this case nevertheless conveys the principle that an attorney would be provided by the government prior to questioning if defendant so desired. The Court finds this sufficient to comply with the dictates of *Miranda*.

available or the suspect himself reinitiates conversation." *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). A valid waiver cannot be established "from a suspect's continued response to questions, even if he is again advised of his rights." *Edwards*, 451 U.S. at 484-85.

The question of whether a suspect actually invoked his right to counsel is an objective one. *Davis*, 512 U.S. at 458-59. "Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Id.* at 459 (citation omitted). However, the request "need not be stated as a model of eloquence and clarity in order to qualify as an unequivocal invocation of the right to counsel." *Alvarez v. Gomez*, 185 F.3d 995, 997 (9th Cir. 1999). For example, a suspect's question asked in immediate response to the *Miranda* warning may be enough to invoke the right to counsel. *Id.* at 998 (finding defendant invoked his right to counsel where he had asked three times if he could get an attorney "right now" after hearing his *Miranda* rights).

If a suspect makes an ambiguous or equivocal assertion of his *Miranda* rights in the context of an initial waiver, interrogating officers are required "to clarify any ambiguity before beginning general interrogation." *United States v. Rodriguez*, 518 F.3d 1072, 1080 (9th Cir. 2008). If the officers fail to clarify the suspect's ambiguous or equivocal request, it is proper for the court to suppress the statements. *Id.* at 1080-81 (finding district court erred in admitting defendant's statements because his response to the initial *Miranda* warning was ambiguous and the officers failed to clarify his wishes).

In this case, the Court finds the Government cannot meet its burden to show that Defendant knowingly and intelligently waived his right to counsel. At the conclusion of the rights advisal, Officer Nicasio asked Defendant, "[S]o do you want to answer the questions, or do you want an attorney?" (Def. Ex. A, at 5:15-16.) Defendant responded by asking "But when will they bring me the attorney?" (Def. Ex. A, at 5:18.) The Court to interprets Defendant's question as either a request for counsel or, at a minimum, an indication that he *may* have been requesting counsel.

This case is similar to *Alvarez v. Gomez*, where the Ninth Circuit held a defendant's questions about the immediate availability of an attorney constituted an unequivocal invocation

of his right to counsel. *Alvarez*, 185 F.3d at 999. In *Alvarez*, the defendant was interviewed by two detectives. After the detectives asked if he understood his *Miranda* rights, the following exchange occurred:

| | |
|---|---|
| Detective: | "Okay. Do you wanna give up the right to remain silent? Mario, you wanna talk to us about this incident?" |
| Defendant: | "Can I get an attorney right now, man?" |
| Detective: | "Pardon me?" |
| Defendant: | "You can have attorney right now?" |
| Detective: | "Ah, you can have one appointed for you, yes." |
| Defendant: | "Well, like right now you got one?" |
| Detective: | "We don't have one here, no. There's not one present now." |
| Detective: | "There will be one appointed to you at the arraignment, ah, whether you can afford one. If you can't one will be appointed to you by the court." |
| Defendant: | "All right." |
| Detective: | (says something unintelligible) |
| Defendant: | "I'll -I'll talk to you guys." |
| Detective: | "Okay. You wanna talk to us without a lawyer here, right?" |
| Defendant: | "Yeah." |

*Id.* at 996-97.

Based on this conversation, the Ninth Circuit found the defendant "made the requisite 'expression of a desire' for the help of a lawyer if one were available." *Id.* at 997. Therefore, the Court stated "the police should have discontinued the interview at that point and not subjected [defendant] to any further questioning until after he had had an opportunity to consult with a lawyer or until he, on his own initiative, resumed the conversation." *Id.* The Court rejected the theory that the defendant "was merely asking clarifying questions regarding his right to counsel" and that the detectives answered the questions in "good faith." *Id.* at 998. The Court also found the defendant's *Miranda* waiver was invalid because it was obtained in response to further police initiated questioning. *Id.* As a result, the Ninth Circuit held the defendant's statements "should have been suppressed." *Id.*

Here, just like in *Alvarez*, when the officers asked Defendant if he was willing to talk to them, he responded with a question about when he would get an attorney. Like in *Alvarez*, the officers told Defendant that an attorney was not presently available, but would be appointed by the court at a later time. Then, like in *Alvarez*, Defendant waived his *Miranda* rights in response to further police initiated questioning.

Therefore, in light of *Alvarez*, the Court finds Defendant's question was an invocation of his right to counsel and not merely a request for information. Accordingly, the officers should have discontinued the interview until after Defendant had an opportunity to consult with an attorney. The Court further finds that since Defendant's waiver was obtained in response to further police initiated questioning, it was without effect. *Desire v. Attorney General of California*, 969 F.2d 802, 804-05 (9th Cir. 1992) (an "unhonored request for counsel vitiates [defendant's] subsequent decision to talk without counsel's presence").

Alternatively, even if Defendant's question did not amount to a clear invocation of his right to counsel, the Court finds that at the very least, it was an ambiguous response. In *Rodriguez*, the Ninth Circuit made it clear that in an initial-waiver scenario, interrogating officers must clarify ambiguous responses to *Miranda* warnings.[3] *Rodriguez*, 518 F.3d at 1074. As the Court noted, "[i]f it is not unreasonable to ask a police officer to administer the warning, it is also not unreasonable to ask him to get an unequivocal waiver before commencing general interrogation." *Id.* at 1079 n.7.

Here, Defendant's question "But when will they bring me the attorney?" was an ambiguous response to Officer Nicasio's initial *Miranda* warning and offer to begin interrogation. At that point, the officers were obligated to clarify whether Defendant was invoking his constitutional right to counsel. However, they did not do so. Moreover, when Defendant said "no," he did not understand the waiver form he had read out loud, the officers did not clarify the ambiguity in the one area Defendant had expressed an interest in – his right to counsel. Instead, they only explained to Defendant that the waiver form meant they were not forcing him or threatening him to say anything. Therefore, the Court finds Defendant's *Miranda* waiver was ineffective. *See Rodriguez*, 518 F.3d at 1080 (stating the government "cannot meet its 'heavy burden' of proving an initial knowing and intelligent waiver of *Miranda* with an ambiguous or equivocal reference to *Miranda* rights.")

---

[3] In *Rodriguez*, the Court distinguished ambiguous responses to initial *Miranda* warnings from ambiguous post-waiver invocations and held that when an interrogating officer receives an ambiguous response to the reading of *Miranda* rights, the officer has a duty to clarify the statement before continuing. *Id.* at 1080.

**CONCLUSION**

Based upon the foregoing, the Court concludes that Defendant's statements were not taken in compliance with *Miranda* and that Defendant's waiver of *Miranda* rights was not knowingly and intelligently given.   Accordingly, Defendant's Motion to Suppress Statements is **GRANTED**.

**IT IS SO ORDERED.**

DATED: May 18, 2009

M. James Lorenz
United States District Court Judge